## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MATTHEW BARON,

        Plaintiff,

   v.

CITY OF CHICAGO, a municipal
corporation, Chicago Police Detective
DAVID WATSON, Chicago Police
Detective KRISTEN M. DONAHUE,
Chicago Police Officer ANTONIO
HERRERA, Chicago Police Officer
MICHAEL CANTORE, and MARIANA
TORRES-LASTRA,

        Defendants.

No.

*Jury Trial Demanded.*

## COMPLAINT AT LAW

NOW COMES Plaintiff MATTHEW BARON, through his counsel, Law Office of Jordan Marsh, complaining of the Defendants, CITY OF CHICAGO, a municipal corporation, Chicago Police Detective DAVID WATSON, Chicago Police Detective KRISTEN M. DONAHUE, Chicago Police Officer ANTONIO HERRERA, Chicago Police Officer MICHAEL CANTORE, and MARIANA TORRES-LASTRA, and states the following:

## INTRODUCTION

1. On May 8, 2019, Matthew Baron was 37 years old. He was a popular and well-regarded teacher at Skinner West Elementary School ("Skinner") in Chicago. Matthew had been a teacher for nine years. In his free time, Matthew traveled around the country entertaining kids with what he called "curriculum-

based/Common Core Standards-aligned educational rock songs" with his band, Future Hits.

2. Everything changed for Matthew in May 2019. On the morning of May 8, Matthew was falsely arrested for a crime he did not commit – a crime that never happened.

3. Matthew was arrested based on an allegation that he had inappropriately touched a 12-year old student for just under 10 minutes in the middle of a classroom of 30 children while substituting for a teacher named Mrs. Irvin.

4. Matthew's arrest, including his name, was featured on local media and social media, much of it orchestrated by Defendant TORRES-LASTRA, the mother of the alleged victim.

5. Matthew was suspended with pay from teaching, and he remains suspended to this day.

6. Both before and after Matthew's arrest, defendants WATSON and DONAHUE (collectively the "Detective Defendants") pursued a hopelessly flawed investigation, ignoring and failing to follow up on multiple red flags that undermined the allegations against him.

7. After the Cook County State's Attorney's office refused to approve felony charges against Matthew, the Detective Defendants insisted he be prosecuted for battery, which did not require approval of the State's Attorney's office.

8. The Detective Defendants, as well as Defendant TORRES-LASTRA, blindly, recklessly, and maliciously pursued Matthew's conviction despite contradictory

statements by the alleged victim and alleged witnesses, and despite the inherent implausibility of the alleged victim's allegations.

9.   After a trial, Matthew was quickly acquitted of the allegations against him by a Cook County Circuit Court Judge, but not before his life was turned upside down, his reputation was irreparably damaged, and his career was jeopardized.

## JURSDICTION AND VENUE

10. This action arises under the Constitution of the United States, particularly the Fourth and Fourteenth Amendments to the Constitution of the United States, under the laws of the United States, particularly the Civil Rights Act, Title 42 of the United States Code, Sections 1983 and 1988, and under the laws of the State of Illinois.

11. The jurisdiction of this Court is invoked under the provisions of Title 28 of the United States Code, Sections 1331 and 1343.  Plaintiff also invokes the supplemental jurisdiction of this Court pursuant to Title 28 of the United States Code, Section 1367.

12. Venue is proper in the United States District Court for the Northern District of Illinois under Title 28 of the United States Code, Section 1391(b)(2), as the events complained of occurred within this district.

## PARTIES

13. Plaintiff MATTHEW BARON (hereinafter "Matthew") is 38 years old. Matthew has been a Chicago public school teacher since 2010.  At all relevant times, Matthew was a resident of the CITY OF CHICAGO, County of Cook, State of Illinois, and a citizen of the State of Illinois.

14. Defendant CITY OF CHICAGO is a municipal corporation organized, existing and doing business under the laws of the State of Illinois, and at all times relevant provided police services in the CITY OF CHICAGO through the Lake Delton Police Department.

15. Defendant Detective DAVID WATSON (hereinafter "Defendant WATSON") was at all times relevant, a sworn police officer and detective employed by Defendant CITY OF CHICAGO, and was acting within the scope of his agency, service and/or employment with the CITY OF CHICAGO, and was acting under color of the statutes, ordinances, regulations, customs, and usages of the State of Illinois. Defendant WATSON is sued in his individual capacity.

16. Defendant Detective KRISTEN M. DONAHUE (hereinafter "Defendant DONAHUE") was at all times relevant, a sworn police officer and detective employed by Defendant CITY OF CHICAGO, and was acting within the scope of her agency, service and/or employment with the CITY OF CHICAGO, and was acting under color of the statutes, ordinances, regulations, customs, and usages of the State of Illinois. Defendant DONAHUE is sued in her individual capacity.

17. Defendant Officer ANTONIO HERRERA (hereinafter "Defendant HERRERA") was at all times relevant, a sworn police officer and detective employed by Defendant CITY OF CHICAGO, and was acting within the scope of his agency, service and/or employment with the CITY OF CHICAGO, and was acting under color of the statutes, ordinances, regulations, customs, and usages of the State of Illinois. Defendant HERRERA is sued in his individual capacity.

18. Defendant Officer MICHAEL CANTORE (hereinafter "Defendant CANTORE") was at all times relevant, a sworn police officer and detective employed by Defendant CITY OF CHICAGO, and was acting within the scope of his agency, service and/or employment with the CITY OF CHICAGO, and was acting under color of the statutes, ordinances, regulations, customs, and usages of the State of Illinois. Defendant CANTORE is sued in his individual capacity.

19. Defendant MARIANA TORRES-LASTRA is the mother of the alleged victim, a 13-year old boy referred to in this Complaint as MTR.[1] At all relevant times, Defendant TORRES-LASTRA was a resident of the CITY OF CHICAGO, County of Cook, State of Illinois, and a citizen of the State of Illinois.

## FACTS

### Matthew's Arrest

20. On May 8, 2019, Matthew was awakened at 6:50 a.m. at his home by Defendants HERRERA and CANTORE.

21. Defendants HERRERA and CANTORE informed Matthew he needed to come with them to the police station.

22. Defendants HERRERA and CANTORE did not inform Matthew why he needed to come to the station.

23. Defendants HERRERA and CANTORE did not read Matthew his *Miranda* rights.

---

[1] All minors referenced in this complaint will be identified by their initials pursuant to Fed. R. Civ. P. 5.2(a)(3).

24.    Defendants HERRERA and CANTORE did not inform Matthew he was being arrested.

25.    Defendants HERRERA and CANTORE did not inform Matthew that he was suspected of committing a crime.

26.    Defendants HERRERA and CANTORE were acting at the direction of Defendant WATSON, and – on information and belief – Defendant DONAHUE.

27.    Matthew knew that there had been an allegation against him by one of his students, but he also knew that he had not done anything wrong, and that the allegation was completely meritless.  He had faith that a major metropolitan police department like the Chicago Police Department would be smart enough to see through the obviously manufactured claim against him.

28.    As a result, Matthew believed that he was being taken to the police station to answer questions to clear up the confusion.  It did not even occur to Matthew that any professional law enforcement officer would believe the allegation against him and order his arrest.

29.    Defendants HERRERA and CANTORE transported Matthew to the 11th District police station at Harrison Street and Kedzie Avenue, where he was interrogated by Defendant WATSON.

30.    Defendant WATSON did not read Matthew his *Miranda* rights and did not inform Matthew of any charges against him.

31.   At one point during the interrogation, Defendant WATSON asked Matthew the age of his fiancé.  Matthew, who was 37 years old, stated that his fiancé was 31 years old.  Defendant WATSON responded, "Oh, you like younger girls, huh?"

32.   Matthew stated that he did not feel comfortable speaking with Detective WATSON. The interrogation was terminated, and Matthew was processed and brought to a jail cell.

33.   Sometime later – possibly the next morning – Matthew was brought from his cell to an interrogation room where Defendant WATSON was located with Defendant DONAHUE.

34.   Defendant WATSON indicated to Matthew that he wanted to conduct a videotaped interview of Matthew.

35.   Matthew responded that he did not want to answer any questions without his attorney. Defendant WATSON became – or acted – visibly irritated and frustrated.

36.   Matthew was detained for 31 hours in Chicago police custody before being released on a personal recognizance bond.

37.   At no time did any police officer advise Matthew of his *Miranda* rights or inform him of the allegations against him.

38.   As a result of his arrest, Matthew was subject to the following requirements and prohibitions, which constituted serious and long-term limitations of his freedom and liberty:

a. Matthew was prohibited from leaving the state without permission of court, and was required to notify the Clerk of the Circuit Court within 24 hours of changing his address.

b. Matthew was required to attend each and every court date.

c. Failure to obey the requirements of the bond could have resulted in the issuance of an arrest warrant, revocation of bail, and prosecution for Bail Jumping.

### Pre-Arrest Investigation

39. Matthew's arrest arose from a report filed by Defendant TORRES-LASTRA – on or before May 2, 2019 – who claimed that Matthew inappropriately touched her son in class.

40. According to Defendant WATSON's Supplementary Report, Defendants WATSON and DONAHUE were assigned to the case on May 2, 2019. Defendant WATSON was assigned as the primary detective.

41. Over the ensuing days, the Detective Defendants purported to investigate the allegation against Matthew.

42. MTR and a number of other children were interviewed by forensic interviewers at the Chicago Children's Advocacy Center ("CCAC"). The interviews were videotaped.

43. The accounts provided by the alleged witnesses in the CCAC interviews were radically and irreconcilably different in ways both large and small.

## MTR's CCAC Interview

44.   On May 2, 2019, MTR was interviewed by a CCAC forensic interviewer. Defendant WATSON was present.

45.   Before he began describing the alleged incident, MTR took a piece of paper from his pocket to read from, stating that he had written facts down beforehand.

46.   MTR made the following statements during his May 2, 2019 CCAC interview:[2]

   a.   Sometime in early March 2019, while the class was watching a 10-minute news show and the lights were off, Matthew rolled his chair to where MTR was sitting, and placed his body close enough to MTR that their elbows and legs were touching.

   b.   After about two minutes of sitting with his elbows and legs touching MTR's elbows and legs, Matthew placed his hand underneath MTR's shirt from above and began to rub MTR's neck.  MTR stated this went on for approximately seven minutes, until the video ended.

   c.   MTR demonstrated Matthew's alleged rubbing of his neck with his hand, palm out, fingers facing down, moving his left hand in a downward motion.

   d.   After the video ended, Matthew stopped what he was doing with MTR, and the lights were turned on.

   e.   Matthew didn't say anything when he was touching MTR.

---

[2] Not verbatim unless in quotes.

    f.  After Matthew stopped what he was doing, MTR looked at his friends, AO and HO, who had seen everything, and they were shocked. He stated that AO and HO were next to him during the incident.

    g.  MTR and his friends began referring to Matthew as "olestermay", which was pig latin for "Molester".

    h.  On two separate occasion during the interview, MTR confirmed that the alleged incident occurred in March.

    i.  MTR stated, "… I just don't want to see [Matthew] anymore. I want him gone. No one likes him, 'cus he's just too much. He's always staring at people."

    j.  MTR asked the interviewer what was going to happen to Matthew, and specifically asked if Matthew was going to be arrested.

    k.  MTR suggested that the school principal may have been involved in an attempted cover-up regarding the alleged incident.

### AO's CCAC Interview

47.  On May 7, 2019, MTR's friend AO was interviewed by a CCAC forensic interviewer.  Defendant WATSON was present.

48.  AO made the following statements[3] during her May 7, 2019 CCAC interview:

    a.  The alleged incident occurred "before 2019."

    b.  AO was sitting next to MTR, and the two were sitting the closest to Matthew's desk.

---

[3] Not verbatim unless in quotes.

c. Matthew rolled his chair over to MTR, and "started like talking to us", and he started touching MTR.

d. Matthew placed his hand on MTR's thigh "and started rubbing his shoulders and like rubbing and massaging his shoulders, and it was just really weird."

e. When Matthew was touching MTR's thigh, it was over his clothes, but (she demonstrated) it was close to his crotch.

f. AO could not recall where Matthew was relative to MTR, "but I just remember seeing him placing his hand, and just like massaging."

g. When asked what Matthew did first, AO stated, "I don't remember the sequence of events, it was a like few months ago."

h. It was before 2019, but she did not recall the date.

i. When the interviewer began a question stating that AO said Matthew started massaging MTR's back, AO corrected her and stated that it was "his arms and his shoulders", placing her hands on either side of her neck.

j. Matthew started rubbing and massaging MTR's shoulders.

k. AO demonstrated Matthew massaging MTR's shoulders using two hands as if they were on either side of MTR's neck, palms down, fingers flexing and extending, as if massaging someone.

l. At one point, Matthew began rubbing and caressing MTR's arm.

m. AO did not see Matthew put his hand inside MTR's shirt.

n. AO just remembered Matthew having a conversation with her and MTR and touching MTR.

o. She is unaware of whether anyone else observed the incident.

p. She does not recall why Matthew stopped rubbing MTR.

q. During the incident, Matthew "was pretty casual, and he just kept talking to us, and it didn't seem right."

r. Another friend of theirs, JD, said that she observed Matthew do something to MTR on another occasion.

s. She asked what would happen to MB.

t. She and her friends refer to Matthew as "edophilepay", which is pig latin for "pedophile".

### JF's CCAC Interview

49. On May 7, 2019, JF was interviewed by a CCAC forensic interviewer. Defendant WATSON was present.

a. During the alleged incident, JF observed Matthew rubbing MTR under his shirt – while Matthew was standing up.

b. JF stated that Matthew was rubbing MTR across his shoulder and then dipped his hand under MTR's shirt, using one hand only.

c. While Matthew was rubbing MTR, he was speaking to the class.

d. After whispering something to MTR, and then having a discussion with MTR, Matthew stopped rubbing him "because he realized that he was around the rest of the class."

12

    e.  Matthew was rubbing MTR for "about three to four seconds" before he stopped.

    f.  Other than dipping his hand inside MTR's collar, JF didn't see Matthew do anything else to any other part of MTR's body.

    g.  This incident occurred in February or March.

    h.  JF then stated that MTR told her, AO, and HO, about another incident that happened before the incident she observed.

    i.  During that previous incident, MTR told JF and AO and HO "that Mr. Baron was rubbing his leg and rubbing inside his shirt..."

    j.  JF stated that she "was always uncomfortable with [Matthew] for some reason. I just didn't know why until I saw him do that to" MTR.

    k.  Nothing ever happened before that that made her feel uncomfortable. "Just his presence made me feel uncomfortable."

    l.  She and her friends used to call Matthew "estermay", which she said was pig latin for "molester".

50. MTR denied recollection of more than one incident with Matthew. In his CCAC interview, he implied that JF was not in a position to see what happened, because she was not sitting near him at the time. MTR also stated that he and JF were no longer friends, characterizing her as his "ex-friend".

51. Neither AO nor HO ever alleged observing or being told about more than one incident involving Matthew touching MTR.

13

52. The interviews of MTR, AO, and JF were factually inconsistent and utterly irreconcilable.

53. Defendant WATSON observed all three CCAC interviews before deciding to have Matthew arrested.

54. Defendant WATSON was aware of the multiple contradictions and inconsistencies in the alleged witness accounts of the alleged incident.

55. Defendant WATSON never attempted to reconcile these accounts or follow up with either MTR or the alleged witnesses to clarify their accounts, either before or after Matthew's arrest.

56. Defendant WATSON omitted from his report the multiple contradictions and inconsistencies in the CCAC accounts.

57. In omitting these contradictions, Defendant WATSON intentionally falsified his report and concealed key exculpatory evidence.

58. Defendant WATSON did not seek to interview any other alleged witness beside MTR, AO, and JF, prior to having Matthew arrested.

### Additional "witnesses" come forward

59. While Matthew was in police custody, Defendant WATSON stated to Matthew's attorney that Matthew was "not out of the woods yet", because "more witnesses are coming forward".

60. Additional alleged witnesses were interviewed by CCAC investigators, but they only served to create more inconsistencies.

61. On May 8, 2019, while Matthew was in police custody, HO was interviewed by a CCAC forensic interviewer. Defendant WATSON was present.

62. Contrary to MTR's assertion, HO stated that she did not observe Matthew touching MTR. Rather, she stated MTR informed her of the incident later on when they were in line for lunch.

63. HO stated that she observed MTR looking uncomfortable when Matthew was sitting next to him, but denied seeing any touching.

64. To recap, Defendant WATSON's investigation revealed that:

    a. Matthew touched MTR for seven to nine minutes (according to MTR), *or* he touched MTR for three to four seconds (according to JF).

    b. Matthew was sitting down when he was touching MTR (MTR and AO), *or* he was standing up while touching MTR (JF).

    c. Matthew was talking to MTR and AO while he was touching MTR (AO), *or* he was speaking to the class (and then to MTR) while he was touching MTR (JF), *or* he was not saying anything (MTR).

    d. Matthew touched elbows and legs with MTR and used one hand to massage MTR's neck and spine by going down the back of his shirt (MTR), *or* he was rubbing MTR across his shoulder and then dipped his hand under MTR's shirt, using one hand only (JF), *or* he placed his hand on MTR's thigh and used two hands to massage MTR's shoulders and arms (AO).

e. Matthew inappropriately touched MTR on one occasion (MTR), *or* he inappropriately touched MTR on two occasions (JF).

f. JF was in a position to see what Matthew was doing to MTR (JF), *or* she was nowhere near him (MTR).

g. HO observed Matthew touching MTR (MTR), *or* she did not observe it, and only found out because MTR told her later (HO).

h. AO either observed Matthew with his hand inside MTR's shirt for at least seven minutes (MTR), *or* she never observed Matthew touching MTR under his shirt, and only learned about it later when MTR told her (AO).

65. HO also stated that MTR told her their principal was engaged in an attempted cover-up relating to the alleged incident.

66. HO stated that MTR told her about the incident at the end of February or early March.

67. On information and belief, the alleged witnesses were all identified by Defendant TORRES-LASTRA, and provided to Defendant WATSON.

68. Defendant WATSON never sought to speak with any alleged witnesses beyond those identified by Defendant TORRES-LASTRA.

69. For instance, Defendant WATSON never attempted to interview any other students who would have been in class during the alleged incident to determine if anyone else had seen Matthew touching MTR (which MTR claimed lasted a total of nine minutes).

70.  Defendant WATSON submitted felony charges against Matthew to the Cook County State's Attorney's Office, which rejected felony charges.

71.  After the Cook County State's Attorney's Office rejected felony charges against Matthew, Defendant WATSON sought and obtained a signed complaint from Defendant TORRES-LASTRA for misdemeanor battery, which was not subject to approval by the State's Attorney's Office, and pursued Matthew's prosecution.

## Date(s) of Occurrence

72.  MTR claimed the single alleged incident occurred on the following dates:

- **December 2018 or January 2019** (per Defendant WATSON's report).

- **Early March 2019** (per MTR's CCAC statement)[4].

73.  Defendant TORRES-LASTRA claimed in a filed petition for order of protection against Matthew that the incident occurred on **March 11, 2019**.

74.  AO claimed the alleged incident occurred on the following dates:

- **Late March 2019** (per report by the Illinois Department of Children and Family Services ("DCFS")).

- **Sometime prior to 2019** (per AO's CCAC statement).

75.  HO claimed MTR told her about the incident in **late February or early March 2019** (per her CCAC interview).

76.  Defendant WATSON stated in his Detective's Supplementary Report that the incident occurred **between February 1 and February 28, 2019.**

---

[4] Both of these statements occurred on the same day: May 2, 2019.

77. Defendant WATSON stated in a different section of the same report that the alleged incident occurred **between December 3, 2018 and January 31, 2019.**[5]

78. Defendant WATSON never explained in his report the basis for the internal discrepancy in his report, nor does he explain or attempt to reconcile the numerous discrepancies between the multiple dates in his report and the multiple dates provided by MTR and others.

79. Defendant WATSON never noted the many discrepancies provided by MTR, his mother, and the alleged witnesses regarding the date of the alleged occurrence in his report, intentionally omitting and concealing significant exculpatory evidence.

80. Any competent or good-faith investigation would have included the simple step of determining which days Matthew was assigned as a substitute in the reading class to narrow down the possible dates on which the alleged an incident could have occurred.

81. For instance, even a cursory investigation would have revealed that Matthew was not even in school on March 11, the date on which Defendant TORRES-LASTRA alleged Matthew touched her son. It would have been as simple as asking the principal or the school clerk for attendance records.

82. But neither Defendant WATSON nor Defendant DONAHUE undertook this very elementary step.

83. Instead, Defendant WATSON asserted in different sections of his report two completely different periods of time –spanning three months – during which the

---

[5] Defendant WATSON's report actually reads "03-DEC-19", but it is clear he meant to indicate "03-DEC-18", or else it would make no sense.

18

incident was alleged to have occurred, and allowed the many other claimed dates by MTR and the alleged witnesses to remain unverified and unquestioned, while Matthew's life was torn apart by the false arrest and prosecution.

## Defendant TORRES-LASTRA defames Matthew.

84. On one or more occasions in and around May 2019, Defendant TORRES-LASTRA claimed on Facebook that Matthew was a pedophile.

85. In May 2019, Defendant TORRES-LASTRA claimed to one or more media outlets that she feared her son was being "groomed" by Matthew.

86. Both claims were false, and Defendant TORRES-LASTRA knew they were false.

87. Defendant TORRES-LASTRA openly recruited witnesses and other alleged victims on social media to further defame and falsely accuse Matthew of improper conduct.

88. Defendant TORRES-LASTRA falsely asserted on social media that she possessed "enough information" to accuse Matthew of improper conduct and to name him on social media despite the fact that he had not been found by any entity to have committed any wrongdoing (and in fact would soon be acquitted).

## Matthew's Damages

89. Matthew had already been falsely accused by Defendant TORRES-LASTRA of improperly touching MTR prior to his arrest. He had already been defamed and called a pedophile by TORRES-LASTRA by the time he was arrested.

90. However, Matthew's false arrest and malicious prosecution added the weight of law enforcement and the criminal justice system to the damage being done by TORRES-LASTRA, ensuring his life would never be the same.

91. With no warning and no explanation, Matthew was taken from his home and forced to undergo abusive, malicious, and insulting questioning by Defendant WATSON without any explanation or being informed of his rights.

92. It was Matthew's arrest that prompted the media coverage of the accusations, which Matthew will never be able to fully escape.

93. Matthew's arrest and prosecution made it virtually impossible to continue his musical career the way it was before, both because of his travel restrictions and because of his newfound online reputation as an accused sex offender.

94. The pain and suffering Matthew endured as a result of Defendants' misconduct was enormous and in many ways irreparable.

95. Matthew incurred nearly $30,000 in legal expenses defending himself against the baseless allegations against him, and thousands more in lost opportunities as a musician.

96. As a result of his arrest and prosecution, Matthew remains on indefinite suspension from his job as a school teacher, unable to fully engage in the career he loves.

97. Law enforcement officers must often be the gatekeepers of citizens' constitutional rights in determining whether probable cause exists to make an arrest or to pursue a prosecution.

98.   It is the sacred and crucial function of law enforcement to analyze allegations and evidence impartially and reasonably when deciding whether to citizens of their liberty and subject them to prosecution.

99.   In this case, the City Defendants failed miserably in their jobs, and in doing so, allowed an obviously baseless accusation to nearly ruin the life of a highly-regarded and respected public school teacher, who at the time of this filing remains separated from the work that he loves because of the unreasonable actions of the defendants.

100. Any remotely competent analysis of the CCAC interviews of MTR and the alleged witnesses would reveal that – for unknown reasons – Matthew was being targeted by a group of students and parents.

101. The interviews reveal an extraordinary amount of coordination and communication between the students and parents, as well as a troubling fixation on what would happen to Matthew as a result of their statements.

102. Despite the obvious coordination and orchestration involved, the students' accounts of the alleged incidents were so profoundly inconsistent and irreconcilable that no competent or good-faith investigator would have determined that probable cause existed for an arrest, let alone a prosecution.  Yet the massive discrepancies and conflicts went unacknowledged and unquestioned, and Matthew's arrest and prosecution went on unhindered by the complete lack of probable cause to support them.

103. On information and belief, Defendant WATSON and Defendant TORRES-LASTRA began a romantic relationship sometime after Matthew's arrest, further undermining the possibility of a reasonable or impartial investigation.

## COUNT I – FEDERAL CLAIM
## FALSE ARREST
## DEFENDANTS WATSON, DONAHUE, HERRERA and CANTORE

104. Each paragraph of this Complaint is incorporated as if restated fully herein.

105. Defendants WATSON, DONAHUE, HERRERA and CANTORE caused Matthew to be arrested without probable cause to believe he had committed a crime, in violation of the Fourth Amendment to the U.S. Constitution.

106. At all times relevant, Defendants WATSON, DONAHUE, HERRERA and CANTORE were acting under color of the statutes, ordinances, regulations, customs, and usages of the State of Illinois, and within the scope of their employment as Chicago police officers.

107. As a proximate result of Defendants' misconduct, Matthew suffered loss of liberty, loss of reputation, mental anguish, emotional pain and suffering, and loss of income.

WHEREFORE, the Plaintiff, MATTHEW BARON, prays for judgment against Defendants WATSON, DONAHUE, HERRERA and CANTORE in a fair and reasonable amount, including compensatory and punitive damages, attorney's fees and costs, and for any additional relief this Court deems just and proper.

## <u>COUNT II – FEDERAL CLAIM</u>
## <u>UNLAWFUL DETENTION</u>
## DEFENDANTS WATSON, DONAHUE

108. Each paragraph of this Complaint is incorporated as if restated fully herein.

109. Defendants WATSON and DONAHUE initiated and continued criminal charges against Matthew without probable cause and with malice, resulting in deprivation of his liberty without probable cause, in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution

110. Defendants WATSON, and DONAHUE accused Matthew of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Matthew without any probable cause for doing so and in spite of the fact that they knew Matthew was innocent, in violation of his rights secured by the Fourth and Fourteenth Amendments to the U.S. Constitution.

111. The charges were dismissed against Matthew on November 19, 2019, in Matthew's favor and in a manner indicative of his innocence.

112. As a proximate result of Defendants' misconduct, Matthew suffered loss of liberty, loss of reputation, mental anguish, emotional pain and suffering, and loss of income.

WHEREFORE, the Plaintiff, MATTHEW BARON, prays for judgment against Defendants WATSON and DONAHUE in a fair and reasonable amount, including compensatory and punitive damages, attorney's fees and costs, and for any additional relief this Court deems just and proper.

## COUNT III – FEDERAL CLAIM
## VIOLATION OF DUE PROCESS
### DEFENDANT WATSON

113. Each paragraph of this Complaint is incorporated as if restated fully herein.

114. Defendant WATSON deprived Matthew of his constitutional right to a fair trial and his right not to be wrongfully convicted and imprisoned, in violation of the Fourteenth Amendment to the U.S. Constitution.

115. In the manner described more fully above, the Defendant fabricated reports, solicited false evidence—including false witness statements, and witness testimony that he knew to be false, withheld exculpatory evidence, and otherwise deprived Matthew of a fair trial, in violation of the Fourteenth Amendment to the U.S. Constitution.

116. Defendant also fabricated reports by omitting exculpatory details and falsely claiming certain witness statements to be consistent, knowing they were not consistent.

117. The charges were dismissed against Matthew on November 19, 2019, in favor of Matthew and in a manner indicative of his innocence.

118. As a proximate result of Defendants' misconduct, Matthew suffered loss of liberty, loss of reputation, mental anguish, emotional pain and suffering, and loss of income.

## COUNT IV – FEDERAL CLAIM
## FAILURE TO INTERVENE
## DEFENDANTS HERRERA, CANTORE, WATSON and DONAHUE

119. Each paragraph of this Complaint is incorporated as if restated fully herein.

120. One or more of the Defendants had a reasonable opportunity to prevent the violation of Matthew's constitutional rights as set forth above, but failed to do so.

121. As a proximate result of Defendants' misconduct, Matthew suffered loss of liberty, loss of reputation, mental anguish, emotional pain and suffering, and loss of income.

WHEREFORE, the Plaintiff, MATTHEW BARON, prays for judgment against Defendants WATSON and DONAHUE in a fair and reasonable amount, including compensatory and punitive damages, attorney's fees and costs, and for any additional relief this Court deems just and proper.

## COUNT V – STATE CLAIM
## MALICIOUS PROSECUTION
## DEFENDANTS CITY OF CHICAGO, MARIANA TORRES-LASTRA

122. Each paragraph of this Complaint is incorporated as if restated fully herein.

123. Defendant CITY OF CHICAGO, by and through its agents, Defendants WATSON and/or DONAHUE, and Defendant TORRES-LASTRA, initiated and/or continued a judicial proceeding against Matthew without probable cause, and with malice.

124. The charges were dismissed against Matthew on November 19, 2019, in favor of Matthew and in a manner indicative of his innocence.

25

125. As a proximate result of Defendants' misconduct, Matthew suffered loss of liberty, loss of reputation, mental anguish, emotional pain and suffering, and loss of income.

WHEREFORE, the Plaintiff, MATTHEW BARON, prays for judgment against Defendants CITY OF CHICAGO and MARIANA TORRES-LASTRA in a fair and reasonable amount, including compensatory and punitive damages, attorney's fees and costs, and for any additional relief this Court deems just and proper.

<u>COUNT VI – STATE CLAIM</u>
<u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>
DEFENDANTS CITY OF CHICAGO, MARIANA TORRES-LASTRA

126. Each paragraph of this Complaint is incorporated as if restated fully herein.

127. The foregoing conduct of Defendant CITY OF CHICAGO, by and through its agents, Defendants WATSON and/or DONAHUE, and of Defendant TORRES-LASTRA, was intentional, extreme and outrageous.

128. In committing the aforesaid misconduct, Defendants intended to inflict severe emotional distress on Matthew, or knew that there was a high probability that their conduct would cause Matthew severe emotional distress.

129. As a proximate result of Defendants' misconduct, Matthew suffered loss of liberty, loss of reputation, mental anguish, emotional pain and suffering, loss of income, and extreme and severe emotional distress.

WHEREFORE, the Plaintiff, MATTHEW BARON, prays for judgment against Defendant CITY OF CHICAGO and Defendant TORRES-LASTRA, in a fair and

reasonable amount, including compensatory and punitive damages, attorney's fees and costs, and for any additional relief this Court deems just and proper.

### COUNT VII -- STATE LAW CLAIM
### DEFAMATION *PER SE* AND *PER QUOD*
### DEFENDANT MARIANA TORRES-LASTRA

130. Each paragraph of this Complaint is incorporated as if restated fully herein.

131. As discussed more fully above, above, Defendant TORRES-LASTRA published statements about Matthew that alleged to criminal conduct, as well as statements that accused him of being a pedophile and preying on children.

132. TORRES-LASTRA's statements about Matthew were false and unprivileged.

133. As a proximate result of Defendant TORRES-LASTRA's misconduct, Matthew suffered loss of liberty, loss of reputation, mental anguish, emotional pain and suffering, loss of income, and extreme and severe emotional distress.

WHEREFORE, the Plaintiff, MATTHEW BARON, prays for judgment against Defendant TORRES-LASTRA, in a fair and reasonable amount, including compensatory damages, and for any additional relief this Court deems just and proper.

### COUNT VIII -- STATE LAW CLAIM
### INDEMNIFICATION
### CITY OF CHICAGO

134. Each paragraph of this Complaint is incorporated as if restated fully herein.

135. At all relevant times, CITY OF CHICAGO was the employer of Defendants WATSON, DONAHUE, HERRERA and CANTORE.

136. Defendants WATSON, DONAHUE, HERRERA and CANTORE committed the acts alleged above under color of law and in the scope of his employment as an employee of the CITY OF CHICAGO.

137. Illinois law provides that governmental entities are directed to pay any tort judgment for any damages for which employees are liable within the scope of their employment activities.

WHEREFORE, should Defendants WATSON, DONAHUE, HERRERA and CANTORE be found liable on one or more of the claims set forth above, the Plaintiff, MATTHEW BARON, demands that, pursuant to Illinois law, Defendant CITY OF CHICAGO be found liable for any judgment plaintiff obtains against Defendants WATSON, DONAHUE, HERRERA and CANTORE, as well as attorney's fees and costs awarded, and for any additional relief this Court deems just and proper.

## JURY DEMAND

Plaintiff, MATTHEW BARON, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

**DATED:**   October 28, 2020

Respectfully submitted,

By:     /s/ Jordan Marsh
        Attorney for Plaintiff

**LAW OFFICE OF JORDAN MARSH**
5250 Old Orchard Road Suite300
Skokie IL 60077
(312) 401-5510
jordan@jmarshlaw.com